UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| LUKE WILSON,<br><br>Plaintiff, | ) | |
| v. | ) | Case No. 5:21-cv-00055-TTC |
| THE TOWN OF MOUNT JACKSON, et al.,<br><br>Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Chief Jeffrey Sterner, hereby moves the Court to dismiss the claims set forth in the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., upon the grounds set forth below.

## I. INTRODUCTION

Plaintiff Luke Wilson has filed a 13-count, 222 paragraph Complaint seeking compensatory and punitive damages arising from events that allegedly occurred in August, 2020. The plaintiff has named as defendants The Town of Mount Jackson, Virginia, Chief of Police Jeff Sterner, Sergeant Keith Cowart, and Police Officers Christina Whorton, Robert Young, and Mark Johnson. The plaintiff has also named Todd Holtzman as a defendant.

The plaintiff has lumped the Mount Jackson police officers together, describing them as "police officer defendants," without delineating or clarifying the alleged role that each played. To be sure, it is impermissible for the plaintiff to set forth claims in such a vague and purposely evasive manner. Chief Sterner moves to dismiss those counts in which he is included as a party, including the First Cause of Action for alleged false arrest and illegal imprisonment as deprivation of rights under 42 U.S.C. §§ 1983 and 1985; the Second Cause of Action for violation of equal protection; the Third Cause of Action for malicious prosecution; the Fifth Cause of Action for Municipal Liability; the Thirteenth Cause of Action in which Chief Sterner is alleged to have participated in a common law conspiracy; and a claim for punitive damages.

For the reasons set forth below, the Complaint fails to state a cause of action and fails to state a claim upon which relief can be granted against Chief Sterner because the plaintiff has failed to allege sufficient facts to support any claims against Chief Sterner, therefore all such claims lack plausibility. Accordingly, Chief Sterner should be dismissed as party, with prejudice, and without leave to amend.

## II. STATEMENT OF THE FACTS

Throughout the Complaint, the plaintiff narrates in a chronological fashion, and attempts to mask legal conclusions as facts, aggregating defendants in such a way that it is unclear which defendants allegedly committed the specific acts of which the plaintiff complains. The following statement of facts is based upon a fair reading of the imprecise pleading, and under familiar rules, will be stated in the light most favorable to the plaintiff.

Importantly, it is impermissible to assume facts not pled and the Court's analysis of the Complaint should not indulge the plaintiff's conclusory allegations.

The plaintiff claims that Holtzman and the Town conspired to arrest him on false grounds, namely that he was trespassing on property that Holtzman and the police officer defendants knew was in the plaintiff's possession. Wilson contends he was arrested without probable cause and forced to spend a day and a half in jail after being charged with a felony. (Complaint, ¶¶ 3 and 4).

Mount Jackson is a municipal corporation and Jeff Sterner is the Chief of Police. In addition, Keith Cowart, Christina Whorton, Robert Young, and Mark Johnson were employed as police officers with the Mount Jackson Police Department. (Complaint, ¶¶ 11-13). The police officers are named in their individual and official capacities as employees of Mount Jackson. (Complaint, ¶ 15).

In August, 2019, Wilson purchased a house located at 6091 Main Street in Mount Jackson. He purchased the house from the owner, who apparently agreed to finance the sale. Soon after completing the purchase, Wilson suffered a series of financial setbacks and fell behind on payments. (Complaint, ¶¶ 19-22).

Wilson received a letter dated July 14, 2020, from an attorney for the owner/mortgagee informing him that he was in default and that a foreclosure sale would proceed on August 14, 2020. A foreclosure auction was held on August 14, 2020, and Holtzman purchased Wilson's house. (Complaint, ¶¶ 38, 39).

Although the plaintiff alleges that a foreclosure auction does not result in the instantaneous transfer of title, these allegations are not legally correct and the Court is not required to accept them as true since they are legal conclusions. In fact, the plaintiff's own allegations in exhibits attached to the Complaint show that the Circuit Court of Shenandoah County entered an injunction prohibiting Wilson from entering upon the property.

Wilson acknowledges that he was away from the Mount Jackson residence at the time of the foreclosure sale, and that Holtzman entered upon the property, placed locks on the doors, nailed the doors shut, and installed No Trespassing signs. (Complaint, ¶ 49).

The Complaint alleges that Chief Sterner and Sergeant Cowart assigned Officer Whorton to patrol the house and to contact Holtzman if she found Wilson on the property. (Complaint, ¶ 63).

The Complaint incorrectly alleges that Holtzman had no right to enter upon the property, and that Wilson had to be removed by an unlawful detainer action. In fact, that is not legally accurate. (Complaint, ¶¶ 67-69).

Plaintiff alleges that the police officer defendants would not have expended resources or failed to conduct due diligence if the case had involved a similarly situated person. However, the Complaint does not identify any other similarly situated individuals. (Complaint, ¶ 74).

Wilson's mother was contacted and told that Wilson needed to clear out the house by the end of the day Monday, August 17, 2020. (Complaint, ¶ 77). Allegedly, Holtzman spoke to Wilson's mother after he and Chief Sterner could not find Wilson.

Purportedly, Holtzman lured Wilson back to the house while the Mount Jackson Police Department was monitoring the house. Wilson returned to the house late in the evening Sunday, August 16, 2020, to claim his property. He brought his girlfriend and other friends to help. Around midnight, Officer Whorton noticed lights on in the house. Officer Whorton approached Wilson and told him he was not allowed on the property. Wilson explained he had returned to the house to collect his personal property. (Complaint, ¶¶ 83-87).

Officer Whorton ultimately arrested Wilson for trespassing and burglary. (Complaint, ¶¶ 94-96).

The Complaint alleges that Officer Whorton was indecisive and was uncertain about whether to simply issue a summons or arrest Wilson. Sergeant Cowart allegedly did not prevent Whorton from arresting Wilson without probable cause and encouraged Whorton to make the arrest. (Complaint, ¶ 105). Officer Whorton preferred to issue a summons and get a warrant at a later date, but other than follow her sense about how best to proceed, Officer Whorton substituted Holtzman's judgment for her own. (Complaint, ¶¶ 106-107). Whorton then arrested Wilson but did not arrest the other persons at the scene. Whorton took Wilson before a magistrate where he was charged with trespassing and burglary. (Complaint, ¶ 112).

The charges against Wilson were nol prossed when he appeared before the general district court. (Complaint, ¶¶ 117-118).

The Complaint alleges that Chief Sterner did not treat Wilson as other similarly situated residents in Mount Jackson. However, the Complaint does not allege how other similarly situated persons were treated or identify any similarly situated persons. (Complaint, ¶¶ 131-132).

## III. LAW AND ARGUMENT

### *A. Standard of Review*

Under Rule 12(b)(6), a court must accept all factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, when reviewing alleged facts in the light most favorable to the plaintiff, "[i]t is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged . . . ." *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "The court need not . . . accept unsupported legal allegations . . . legal conclusions couched as factual allegations . . . or conclusory factual allegations devoid of any reference to actual events." *Johnson v. MV Transp. Inc.*, 716 F. Supp. 2d 410, 413 (D. Md. 2010) (internal citations to Supreme Court and Fourth Circuit opinions omitted); s*ee also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("[D]etermining whether a complaint . . . can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

show[n]—that the pleader is entitled to relief. . . .” (internal quotations and citations omitted)).

“[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation marks and citations omitted).

*B. Legal Analysis and Argument*

(i) Plaintiff fails to state a claim against Sterner for false arrest and illegal imprisonment under 42 U.S.C. §§ 1983 and 1985 and the Virginia Constitution.

Plaintiff's “First Cause of Action” is against the “Police Officer Defendants” for false arrest, imprisonment, and deprivation of liberty under “42 U.S.C. §§ 1983 and 1985 and the Virginia Constitution” (hereinafter referred to as “Count One”). (Complaint, ¶¶ 142-143).

It is well established law that for a § 1983 claim against a supervising officer, “‘respondeat superior is not the standard.’” *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Rather, “[t]he law establishes only that a supervisor cannot be deliberately indifferent to the violation of an individual's rights. It does not burden a superior officer with a heightened affirmative duty to investigate.” *Jackson v. Brickey*, 771 F. Supp. 2d 593, 603 (W.D. Va. 2011). “[A] properly pled claim for supervisory liability must go beyond a theory that the superior is liable merely by virtue of his office.” *Id.* “Suits against government agents in their

personal capacities cannot succeed absent proof of some degree of personal involvement in the alleged deprivation of rights." *Harrison v. Prince William Cty. Police Dep't*, 640 F. Supp. 2d 688, 711 (E.D. Va. 2009) (internal citations and quotations omitted).

Unless there is a claim against a supervising official for his direct actions, a supervising official may only be held liable under a theory of supervisory liability, which requires direct involvement in the action. *Jackson*, 771 F. Supp. 2d at 602.

> The test for supervisory liability under § 1983 is a stringent one, involving three elements: (1) that the supervisor had actual or constructive knowledge that his subordinate's conduct posed a pervasive and unreasonable risk of constitutional injury; (2) that the supervisor's response was so inadequate as to show deliberate indifference or tacit authorization; and (3) that there was a causal link between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994).

*Id.*

As a preliminary matter, the Plaintiff does not distinguish, in any way, between any of the "Police Officer Defendants". Critically, the Plaintiff also fails to identify any specific acts or conduct attributable to Sterner. The purported unconstitutional act suffered by the Plaintiff was his arrest. The sole officers involved in the Plaintiff's arrest were Whorton and Cowart. In fact, Whorton specifically called Cowart before deciding to arrest the Plaintiff. No calls were made to consult Sterner. Under a plain reading of the Complaint, Sterner had no involvement in the Plaintiff's arrest. Sterner, therefore, cannot be directly liable under § 1983. *See Jackson*, 771 F. Supp. 2d at 603 ("Thus, because Jackson's allegations do not set forth any facts implicating Chief Surber

as personally involved in Jackson's arrest, nor do they sufficiently plead a claim for supervisory liability under § 1983, I grant the Motion to Dismiss these claims as to Chief Surber"); *see also* Carter, 164 F.3d 215, 221 (dismissing the direct claims against the police chief where he was not involved in the raid on the plaintiff's home or involved in her interrogation).

Regarding possible supervisory liability, the Complaint fails to establish sufficient prior bad acts on the part of Sterner from which a "pervasive and unreasonable risk of harm" could be found or implied. *Harrison*, 640 F. Supp. 2d at 711. The only acts contributable to Sterner directly — i.e. advising a citizen to put up "No Trespassing Signs" on property he purchased out of foreclosure and directing subordinates to monitor property for potential burglaries — do not suggest or implicate that Sterner was indifferent to the risk of constitutional violations. In fact, as the Complaint shows, Sterner was not consulted or advised that the Plaintiff was being arrested. Sterner was not given an opportunity to respond to the arrest or to prevent it. Accordingly, the Complaint fails to satisfy the "stringent" test of supervisory liability. *Jackson*, 771 F. Supp. 2d at 602.

Count One also purports to assert a claim under section 1985. Presumably, Plaintiff intends to bring a claim under subsection (3) (although he fails to specify which subsection) as subsection 1 relates to preventing officers from performing duties and subsection 2 relates to intimidating parties, witnesses, or jurors. "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it

designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). A plaintiff must show five elements to state a claim for a § 1985 conspiracy:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without a Name v. Va.*, 655 F.3d 342, 346 (4th Cir. 2011).

The plaintiff additionally "must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." *Id.* (internal citations and quotations omitted). There is a "weighty burden to properly bring" a § 1985 conspiracy claim. *Smith v. Town of South Hill*, Civil Act. No. 3:19cv46, 2020 WL 1324216, at *26 (E.D. Va. Mar. 20, 2020). Conspiracy claims are to be rejected "whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *A Soc'y Without a Name*, 655 F.3d at 346.

Here, Count One is entirely devoid of any facts supporting a § 1985 conspiracy. Indeed, Sterner neither participated in the Plaintiff's arrest nor was he consulted. The Complaint further lacks any credible claims of a "specific class-based, invidiously discriminatory animus." *Id.* Accordingly, the Plaintiff fails to state a claim for a § 1985 conspiracy.

Finally, the Plaintiff alleges Sterner has violated the "Virginia Constitution". Notably, the Plaintiff fails to identify which section of the Virginia Constitution was

allegedly violated. However, for the same reasons that the Plaintiff's federal claims fail against Sterner, any parallel state claim must also fail. *See, e.g.*, *Lloyd v. Morgan*, 2015 WL 1288349, at *7-*8 (E.D. Va. Mar. 20, 2015) (concluding where plaintiff failed to state a claim for a federal constitutional violation, her parallel state claim also failed).

(ii) Plaintiff fails to state a claim against Sterner for equal protection violation under 42 U.S.C. §§ 1983 and 1985 and the Virginia Constitution.

The Plaintiff's "Second Cause of Action" ("Count Two") is for alleged "Equal Protection Violation" against "The Police Officer Defendants". Similar to Count One, the underlying "illegal" action alleged is the alleged improper arrest of the Plaintiff. Plaintiff, once again, lumps in all the police officers without making any distinction between them or their actions. The purported protected class that the Plaintiff supposedly was treated differently from are "others whose houses had been subject to a foreclosure sale." (Complaint, ¶ 148).

To establish a prima facie case of discrimination under the equal protection clause, the plaintiff must demonstrate that he is similarly situated to members of a protected class, that he was treated differently from members of the protected class, and that the defendants acted with discriminatory intent. *Baker v. McCall*, 842 F. Supp. 2d 938, 950 (W.D. Va. 2012) (citing *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999)). Not a single of these elements are sufficiently pled.

Additionally, violation of the equal protection clause requires purposeful and intentional discrimination. It requires that the decision maker undertake a course of action

because of the action's adverse effect upon a group and that the act be committed with discriminatory purpose. *Iqbal*, 556 U.S at 676. It is well established that to hold the individual defendants liable for a constitutional deprivation, the plaintiff must prove a "recognized theory of direct fault." *McWilliams v. Fairfax County Bd. Of Supv.,* 72 F.3d 1191, 1197 (4th Cir. 1996) (*citing Collins v. City of Harker Heights,* 503 U.S. 115, 120-21 (1992), *overruled on other grounds by Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)); *see Danser v. Stansberry*, 772 F.3d 340, 349-50 (4th Cir. 2014) (noting "liability may be imposed based only an official's own conduct").

Here, the Plaintiff fails to identify membership in any protected class. Even assuming that homeowners subject to foreclosure sales are qualifying class under the Equal Protection Clause, the Plaintiff simply states — in a wholly conclusory manner — that he was treated differently. He fails to plead any examples where foreclosed homeowners were treated differently.

Critically, the underlying illegal act complained of is the purported illegal arrest. Sterner did not participate in the arrest nor was he consulted. Accordingly, the Plaintiff has clearly failed to satisfy the recognized theory of direct fault as required.

Similar to Count One, Count Two is entirely devoid of facts supporting a § 1985 conspiracy. Indeed, Sterner did not participate in the Plaintiff's arrest nor was he consulted. The Complaint further lacks any credible claims of a "specific class-based, invidiously discriminatory animus". *Id*. Accordingly, the Plaintiff fails to state a claim for a § 1985 conspiracy.

Finally, as with Count One, the Plaintiff alleges Sterner has violated the "Virginia Constitution." Notably, the Plaintiff fails to identify which section of the Virginia Constitution was allegedly violated. However, for the same reasons that the Plaintiff's federal claims fail against Sterner, any parallel state claim must also fail. *See, e.g.*, *Lloyd v. Morgan*, 2015 WL 1288349, at *7-*8 (E.D. Va. Mar. 20, 2015) (concluding where plaintiff failed to state a claim for a federal constitutional violation, her parallel state claim also failed).

(iii) Plaintiff fails to state a claim against Sterner for malicious prosecution under 42 U.S.C. §§ 1983 and 1985 and the Virginia Constitution.

In Plaintiff's "Third Cause of Action" ("Count Three"), Plaintiff asserts a claim under §§ 1983 and 1985 and the Virginia Constitution for malicious prosecution. Once again, the underlying act at issue is the purported illegal arrest of the Plaintiff. The Plaintiff also — again — lumps all of the police officers together and fails to differentiate between any of them.

First, Plaintiff's claim of malicious prosecution under § 1983 fails as a matter of law. "Section 1983 is not in itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 270 (1994) (citation and internal quotation marks omitted). The U.S. Supreme Court's plurality opinion in *Albright v. Oliver* held there is no constitutional claim for malicious

prosecution.[1] *See Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) ("Our analysis in *Brooks* . . . makes clear that there is no such thing as a '§ 1983 malicious prosecution' claim."). To the extent § 1983 provides a remedy for wrongful and malicious prosecution, the plaintiff must allege he suffered a deprivation of rights protected by the Fourth Amendment, which he has failed to do.

Under Virginia law, in order to state a claim for malicious prosecution, the plaintiff must allege and prove "that the prosecution was: (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Hudson v. Lanier*, 255 Va. 330, 333, 497 S.E.2d 471, 473 (1998). The Supreme Court of Virginia has repeatedly held that malicious prosecution actions are not favored in Virginia, particularly with regard to actions arising from criminal cases, because the law favors the prosecution of crimes. *Lee v. Southland Corp.*, 219 Va. 23, 26, 244 S.E.2nd 756, 758 (1978). "In the context of a malicious prosecution action, malice is defined as any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson*, 255 Va. at 333, 497 S.E.2d at 473. The absence of probable cause does not in and of itself establish malice in the institution of a prosecution. *Freezer v. Miller*, 163 Va. 180, 202-04, 176 S.E. 159, 168 (1934). Count III fails to allege any facts supporting this notion.

---

[1] Because there is no federal constitutional claim for malicious prosecution, Plaintiff's § 1985 claim also must fail.

With respect to the attempted assertion of a malicious prosecution claim against Sterner, there are no facts alleged to support such a claim. Sterner did not participate in nor was he involved in the Plaintiff's arrest. Any action taken by Sterner after the charges were dismissed are simply irrelevant, and constitute red herring allegations. Accordingly, Count Three should be dismissed against Sterner.

(iv) Plaintiff fails to state a claim against Sterner for failure to intervene under 42 U.S.C. §§ 1983 and 1985 and the Virginia Constitution.

Plaintiff's "Fourth Cause of Action" ("Count Four") is, once again, against "The Police Officer Defendants" for "Failure to Intervene" to prevent the purported unlawful arrest. Plaintiff alleges that "[t]hose Police Officer Defendants that were present but did not actively participate . . . had an opportunity [*sic*] prevent such [unlawful] conduct, had a duty to intervene and present such conduct, and failed to intervene." (Complaint, ¶ 162). However, Plaintiff fails to identify which Police Officer Defendants Count Four is brought against, putting the onus on all such defendants to respond, even where there is no basis in fact to bring the cause of action.

Importantly, "the weight of controlling precedent finding there is generally no duty to intervene." *Turner v. Thomas*, 313 F. Supp. 3d 704, 714 (W.D. Va. 2018), aff'd, 930 F.3d 640 (4th Cir. 2019). Generally speaking, "the Fourth Circuit addresses a failure to intervene claim as a theory of 'bystander liability' wherein there is an omission to act . . . coupled with a duty to act." *Olvera v. City of Walhalla*, No. 8:20-CV-2857-JD-KFM, 2021 WL 1929833, at *2 (D.S.C. Feb. 5, 2021), *report and*

*recommendation adopted*, No. 8:20-CV-2857-JD-KFM, 2021 WL 1929401 (D.S.C. May 12, 2021) (internal citations and quotations omitted). A plaintiff must, therefore, demonstrate that an officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* Critical to maintaining a claim under the theory of bystander liability against a supervising officer is that the supervisor be present at the relevant time and possess specific knowledge of the other officer's actions. *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1031 (D. Md. 2019).

Here, Sterner was not present at the time of the arrest. Sterner was not aware the arrest was taking place. Sterner was not consulted about the arrest. These facts nowhere to be found in the Complaint. Accordingly, there is no basis alleged for bystander liability against Sterner. Consequently, Count Four – under all theories of federal or state liability – should be dismissed against Sterner.

(v) Plaintiff fails to state a claim for municipal liability based on Sterner's actions.

The Plaintiff's "Fifth Cause of Action" is for municipal liability against the Town of Mount Jackson ("Count Five"). Although Count Five is not directed specifically against Sterner, it is based on allegations levied against Sterner, so it is being addressed.

A suit against a public officer in his official capacity is in operation and in actuality a suit against the public officer's governmental employer, and therefore the same standard that is applied to government entities applies in an official capacity suit. *See Hafer*

*v. Melo*, 502 U.S. 21, 25 (1991). In order to hold a municipality such as the Town of Mount Jackson liable under § 1983, a plaintiff must prove that "action pursuant to official municipal policy [or custom] of some nature caused [the] constitutional tort," and only when that policy or custom is "the moving force of the constitutional violation" is the government entity liable. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). A policy is "a course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) (internal quotation marks omitted). A custom exists when the "persistent and widespread" practices of government officials are "so permanent and well-settled as to [have] the force of law." *Id.* at 1386 (internal quotation marks omitted).

Here, the Plaintiff's theory of municipal liability is entirely based on Sterner's alleged conduct. The Complaint contains no allegations supporting a claim that the policies of the Town of Mount Jackson, as enforced by Sterner, caused his injury. Isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice. *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999) and *Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991)). Here, despite his conclusory statements to the contrary, the Plaintiff is complaining of one specific

instance of purportedly unconstitutional conduct — his arrest — which is insufficient to establish a custom or practice.

Moreover, the alleged facts surrounding the Plaintiff's arrest demonstrate there was no applicable custom or policy. The Complaint makes it clear that Whorton was unsure whether to arrest the Plaintiff and sought additional direction from Cowart (not from Sterner). If there was, in fact, an underlying policy or custom as alleged, Whorton would not have needed additional guidance. Accordingly, Count Five should be dismissed.

(vi) Plaintiff fails to state a claim for common law conspiracy against Sterner.

The Plaintiff's "Thirteenth Cause of Action" is for "Common Law Conspiracy Against Holtzman" ("Count Thirteen"). Although Count Thirteen is not specifically plead against Sterner, the underlying facts alleged involve Sterner and accuse Sterner of being part of an alleged conspiracy. The alleged torts underlying the conspiracy claim are defamation, false imprisonment, malicious prosecution, trespass, conversion, and unlawful detainer/ejectment. (Complaint, ¶ 219).

Under Virginia law, "'[a]common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means.'" *Darton Env't, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1034 (W.D. Va. 2018) (quoting *Gelber v. Glock*, 293 Va. 497, 533, 800 S.E.2d 800 (2017)). A conspiracy claim must contain more than conclusory allegation; there must be a meeting of the minds shown to

accomplish the conspiracy's purpose. *Id.* (citing *A Soc'y Without A Name*, 655 F.3d at 346).

The first alleged unlawful purpose the Plaintiff alleges is defamation. The elements of defamation are: (1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013) (internal citations and quotations omitted). None of the acts "in furtherance" of the alleged conspiracy complained of in Paragraph 220 of the Complaint satisfy the element of defamation. Indeed, there are no published statements identified at all, let alone a meeting of the minds between Holtzman and Sterner to plausibly plead a conspiracy claim.

Regarding any alleged conspiracy to violate the Plaintiff's constitutional rights, such false imprisonment, "to state a claim for conspiracy to deprive an individual of a constitutional right in violation of § 1983, Plaintiff must allege that defendants (1) 'acted jointly in concert' and (2) performed an overt act (3) 'in furtherance of the conspiracy' that (4) resulted in the deprivation of a constitutional right." *Harrison*, 640 F. Supp. 2d at 706–07 (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). Specific facts must also be pleaded in a nonconclusory manner to survive a motion to dismiss. *Id.*

Here, the facts alleged, as it pertains to Sterner, fail to establish a conspiracy to falsely imprison the Plaintiff. Sterner had no involvement in the Plaintiff's arrest or imprisonment. Indeed, he was not consulted or contacted. Even if Sterner knew after the fact of Plaintiff's arrest and imprisonment, Sterner cannot be included in a conspiracy after the complained-of acts were completed. *See Harrison*, 640 F. Supp. 2d at 707.

The Plaintiff further claims there was a conspiracy to maliciously prosecute him. The Supreme Court of Virginia has never recognized a claim for civil conspiracy to commit malicious prosecution. In a recent decision, it has shown a disinclination to recognize an additional civil conspiracy claim because of the confusion that results from creating a claim that is adequately covered by the primary tort.

In *Almy v. Grisham*, 273 Va. 68, 639 S.E.2d 182 (2007), the Virginia Supreme Court declined to recognize a claim for conspiracy to commit the tort of intentional infliction of emotional distress. The court wrote that a plaintiff can allege joint liability of parties who act in concert to commit the tort of intentional infliction of emotional distress without the need to assert a claim of conspiracy. *Almy*, 273 Va. at 81, 639 S.E.2d at 189. The court recognized that should it recognize a conspiracy claim, the confusion resulting from the absence of clear guidance would compound the difficulties of instructing the jury and the difficulties a jury would face in making such a determination. *Almy*, 273 Va. at 81, 639 S.E.2d at 189.

The same reasoning applies in this instance. The court should not allow the plaintiff to pursue a claim for conspiracy to commit malicious prosecution. The Plaintiff has asserted a civil conspiracy claim elsewhere in the Complaint. At common law, a civil conspiracy requires proof that an underlying tort was committed. "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an

unlawful purpose or use an unlawful means." *Almy*, 273 Va. at 81, 639 S.E.2d at 189 (citations omitted).

The Plaintiff next complains of a conspiracy to trespass. "[A] trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." *Cooper v. Horn*, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994). "[I]n order to maintain a cause of action for trespass to land, the plaintiff must have had possession of the land, either actual or constructive, at the time the trespass was committed." *Id.* The Complaint establishes the fact that Holtzman purchased the real property at issue from a foreclosure sale, and indicates that Sterner was aware that Holtzman was the new owner of the property. (Complaint, ¶ 39, 51). The fact that Sterner advised a citizen that he should put up "No Trespass" signs on property that the citizen advises he owns is hardly unlawful or improper.

The Plaintiff also claims there was a conspiracy to commit conversion. The elements of conversion are "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305, 440 S.E.2d 902, 905 (1994) (internal citations and quotations omitted). "Virginia has not recognized the tort of conversion over the wrongful exercise of authority over real property." *Whitaker v. Sheild*, Civil Act. No. 4:05cv130, 2006 WL 1321481, at *13 (E.D. Va. May 3, 2006); *see Watson v. Lederman*, 83 Va. Cir. 434, 2011 WL 8964926, at *2 (Va. Cir. Ct. Oct. 6, 2011). The Plaintiff's claim

for conversion rests on Holtzman's interference with the Plaintiff's alleged real property rights in the foreclosed property. Because Virginia does not recognize conversion of real property, there can be no viable claim for conspiracy.

Finally, the Plaintiff alleges a conspiracy to commit unlawful detainer/ejectment. This claim, however, is nonsensical. Both unlawful detainer and ejectment are types of civil actions or claims to be filed for possession and determination of ownership of real property; they are not torts upon which a conspiracy can be based. *See, e.g,*, *Clayton v. Landmark Prop. Mgmt. Co.*, Case No. 4:20cv00013, 2021 WL 2394408, at *5 (W.D. Va. June 11, 2021) ("An unlawful detainer action is to evict a tenant from property."); *Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*, Civil Act. No. 3:1-cv-00053, 2011 WL 550988, at *1 n2 (W.D. Va. Nov. 10, 2011) ("An action for ejectment is a common law remedy, but it is now controlled by statute. . . . An action for ejectment determines the title and right of possession for real property.").

Based on the foregoing, the Plaintiff has failed to state a claim for conspiracy against Sterner.

(vii) Plaintiff fails to state a claim for punitive damages against Sterner.

Finally, the Plaintiff seeks an award of punitive damages. Punitive damages are only allowed in Section 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Similarly, under Virginia law, punitive damages are only available in tort where "the wrongful act is done with a bad motive, with such gross negligence as to amount to positive misconduct or in a manner so wanton or reckless as to manifest a willful disregard of the rights of others." *Evans v. Schuster*, 178 Va. 61, 67, 16 S.E.2d 301 (1941). Punitive damages are not favored and "should be assessed only in cases of most egregious conduct." *Owens-Corning Fiberglass Corp. v. Watson*, 243, 128, 144, 413 S.E.2d 630, 639 (1992).

Here, the Plaintiff has failed to state any facts that would support punitive damages under federal or state law against Sterner. The main underlying purportedly wrongful act complained of is the arrest of the Plaintiff. Sterner was not involved in the arrest nor was he consulted. The only acts attributed to Sterner directly — i.e. advising a citizen to put up "No Trespassing Signs" on property he purchased out of foreclosure — do not violate any federally or state protected rights and are simply not of the type of egregious conduct that would give rise to punitive damages. Accordingly, the claim for punitive damages against Sterner should be dismissed.

## IV. CONCLUSION

The claims and allegations against Chief Sterner fail in their specificity, plausibility and sufficiency. The shotgun approach taken by the plaintiff reveals the absence of factual support and a sound legal basis for proceeding against Chief Sterner. Accordingly, all claims against him should be dismissed, and he should be dismissed as a party.

CHIEF JEFFREY STERNER

By Counsel

W. Bradford Stallard
VSB No. 28149
PENN, STUART & ESKRIDGE
P.O. Box 2288
Abingdon, Virginia 24212
Telephone: 276/628-5151
Facsimile: 276/628-5621
bstallard@pennstuart.com

By *_/s/ W. Bradford Stallard__*
W. Bradford Stallard

CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ W. Bradford Stallard*
W. Bradford Stallard