IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRIONSBURG DIVISION

| | |
|---|---|
| LUKE WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:21cv55 |
| | ) |
| THE TOWN OF MOUNT JACKSON, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT CHRISTINA WHORTON'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Officer Christina Whorton ("Whorton"), by counsel, files this Memorandum in Support of her Motion to Dismiss the Complaint filed against her by Luke Wilson ("Plaintiff" or "Wilson"). Plaintiff's Complaint against Whorton fails to state a claim against her upon which relief can be granted and, therefore, must be dismissed.

**I.     INTRODUCTION**

This case arises out of a dispute between Plaintiff and one of the other defendants, Todd Holtzman ("Holtzman"), concerning property in the Town of Mount Jackson, Virginia. Holtzman purchased Plaintiff's former property at a foreclosure sale on August 14, 2020. Thereafter, Holtzman requested local police conduct periodic checks on the property. While conducting one such check, Officer Whorton located Plaintiff on the property. She subsequently arrested him for trespassing and burglary.

Plaintiff has filed a 13-count Complaint against six defendants. Named Defendants include the Town of Mount Jackson, Chief Jeff Sterner of the Mount Jackson Police Department

1

("MJPD"), MJPD Sergeant Keith Cowart, and MJPD Officers Christina Whorton, Robert Young, and Mark Johnson. Plaintiff also named Holtzman as a defendant.

Of the 13 counts, only the first three are asserted against Officer Whorton. Whorton is lumped in with a group of officers identified as "Police Officer Defendants." (Compl. ¶ 1.) In his First Cause of Action, Plaintiff asserts a claim against the "Police Officer Defendants" for false arrest under 42 U.S.C. §§ 1983 and 1985. (*Id*. ¶¶ 141-44.) The Second Cause of Action asserts an equal protection claim against the "Police Officer Defendants" under 42 U.S.C. §§ 1983 and 1985. (*Id*. ¶¶ 145-53.) Plaintiff's Third Cause of Action asserts a malicious prosecution claim against the "Police Officer Defendants" under 42 U.S.C. §§ 1983 and 1985. (*Id*. ¶¶ 154-60.)[1]

All three claims against Officer Whorton are based on the central claim that Whorton arrested Plaintiff without probable cause. (*See* Compl. ¶¶ 142, 146, 158.) These claims against Whorton are grounded in a fundamental misunderstanding of Virginia law. "Upon foreclosure under a Virginia deed of trust, '[t]he contract of sale [is] consummated when the auctioneer crie[s] the property out to the person making the highest and last bid.'" *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 324 (2015) (citations omitted). "Indeed, '[o]nce the auctioneer's hammer falls and he signs a memorandum of sale, the [d]ebtor no longer possesses a legal or equitable interest in the property.'" *Epperson v. Smith*, 836 F. App'x. 127, 130 (4th Cir. 2020) (quoting *City of Roanoke v. Whitlow*, 410 B.R. 220, 224 (Bankr. W.D. Va. 2009)). "At this point, and before settlement, the trustee retains legal title to the property, while the purchaser

---

[1] Plaintiff's Fourth Cause of Action is a bystander liability claim against the "Police Officer Defendants" under 42 U.S.C. §§ 1983 and 1985. (*Id*. ¶¶ 161-65.) Presumably, Plaintiff is not asserting a bystander liability claim against the officer who he alleges arrested him. The nine remaining claims in the Complaint exclusively are against either the Town of Mount Jackson or Holtzman.

2

possesses the right to enforce the sale in equity." *Abdelhaq v. Pflug*, 82 B.R. 807, 810 (Bankr. E.D. Va. 1988) (citing *Ryland Group, Inc. v. Wills*, 229 Va. 459, 464 (1985)).

Based on the law in Virginia and the allegations in the Complaint, Officer Whorton cannot be liable for violating Plaintiff's constitutional rights. She plainly had probable cause to arrest Plaintiff, since he had no right to be on the property. Moreover, her actions could not have violated any clearly established right. Officer Whorton moves to dismiss the constitutional claims against her because the allegations establish the applicability of qualified immunity to this case.

## II.     MATERIAL ALLEGATIONS AGAINST OFFICER WHORTON

Plaintiff alleges that he purchased 6091 Main Street in the Town of Mount Jackson (the "Property") in August of 2019. (Compl. ¶ 18.) He alleges that he fell behind on his payments on the Property, and the mortgagee declared him in default and proceeded to foreclose. (*Id.* ¶¶ 22, 34.) The foreclosure proceeding culminated with a foreclosure auction on or about August 14, 2020. (*Id.* ¶ 38.) Holtzman "purchased" the Property at the foreclosure auction for $61,500. (*Id.* ¶ 39.)

Plaintiff alleges Holtzman launched a scheme to have him arrested. (*See id.* ¶¶ 48, 49, 53, 77, 82.) Holtzman asked Chief Sterner to assign officers to patrol the Property, allegedly in an effort to catch Plaintiff trespassing and have him arrested. (*Id.* ¶¶ 53-54.) Plaintiff alleges that Chief Sterner and Sergeant Cowart assigned Whorton to patrol the Property. (*Id.* ¶ 62.) There is no allegation that Holtzman ever communicated his alleged scheme to with Whorton.

Whorton patrolled the Property as she had been assigned to do. (*Id.* ¶¶ 62-65.) While patrolling, Whorton located Plaintiff on the Property after midnight. (*Id.* ¶ 85-86.) The Property had been posted with "No Trespassing" signs, and Whorton had been assigned to patrol for

3

trespassers. (*Id*. ¶¶ 49, 61-62.) Whorton told Plaintiff that he was not allowed on the Property. (*Id*. ¶¶ 86, 90.) Whorton allegedly did as she had been instructed and called Holtzman. (*Id*. ¶¶ 88-89.) When Whorton spoke with Holtzman, he informed her that Plaintiff was trespassing on the Property. (*Id*. ¶ 94.) Holtzman also accused Plaintiff of kicking in the doors of the Property to gain access. (*Id*. ¶ 95; *see also id*. ¶ 85-86.) Plaintiff alleges that Whorton was uncertain about what to do in the situation. (*See id*. ¶¶ 101-110.) Ultimately, Whorton decided to arrest Plaintiff. (*Id*. ¶ 111.) Whorton then transported Plaintiff to the magistrate where he was charged with trespass and burglary. (*Id*. ¶ 112.) The criminal charges against Plaintiff eventually were dismissed through entry of an order of nolle prosequi. (*Id*. ¶ 119.)

## III.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). A plaintiff fails to state a claim when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the plaintiff's complaint. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002) (citation omitted). Although a plaintiff's "well-pleaded" factual allegations should be accepted as true by the Court in considering a Rule 12(b)(6) motion, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citation omitted), the Court is not required to "accept the [plaintiff's] legal conclusions

drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (citation and internal quotations omitted).

## IV.  ARGUMENTS AND AUTHORITIES

Plaintiff basis his claims against Whorton on the allegation that he was arrested without probable cause. (*See* Compl. ¶¶ 142, 146, 158.)  Because Plaintiff's arrest plainly passes constitutional muster, Plaintiff's constitutional claims against Whorton must be dismissed.

### A. Plaintiff's Constitutional Claims Must Be Analyzed Utilizing The Qualified Immunity Framework.

Plaintiff asserts constitutional claims against Whorton in her individual capacity under 42 U.S.C. § 1983.  (Compl. ¶ 15.)  Government officials sued under § 1983 in their individual capacities are protected by qualified immunity "from suit for damages when their conduct does not violate a 'clearly established' constitutional right." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A qualified immunity analysis "involves a two-step inquiry, asking first whether a constitutional violation occurred and second whether the right violated was clearly established." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (citation and internal quotations omitted).  A court may address these questions in either order. *Id*. at 188 n.6 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

In this case, it is appropriate to begin with the first prong:  whether there was any constitutional violation at all.  "Plainly, if an officer did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there." *Lucas v. Shively*, 31 F. Supp. 3d 800, 810-11 (W.D. Va. 2014) (citations and internal quotations omitted).

### B. Plaintiff's Claim That Whorton Arrested Him Without Probable Cause Fails As A Matter Of Law.

The United States Court of Appeals for the Fourth Circuit recognizes two claims under 42 U.S.C. § 1983 for an arrest that violates an individual's Fourth Amendment rights: false arrest and malicious prosecution. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181-82 (4th Cir. 1996). "[A]llegations that a warrantless arrest or imprisonment was not supported by probable cause advance[] a claim of false arrest or imprisonment." *Id*. at 181 (citations omitted). "[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution." *Id*. at 182 (citations omitted); *see also Wallace v. Kato*, 549 U.S. 384, 388-90 (2007) (observing that claims of false arrest and false imprisonment overlap and involve detention *without legal process* while claims of malicious prosecution involve detention *pursuant to legal process*); *Bellamy v. Wells*, 548 F. Supp. 2d 234, 237 (W.D. Va. 2008) (dismissing false arrest claim because plaintiff was arrested pursuant to an arrest warrant) (citation omitted); *Norton v. Stidham*, 2009 U.S. Dist. LEXIS 120850, at *11-12, 2009 WL 5214484 (W.D. Va. Dec. 29, 2009) (discussing distinctions between causes of action for false arrest and malicious prosecution).

Whether characterized as a false arrest claim or a malicious prosecution claim, Plaintiff cannot prevail if there was probable cause for his arrest. *Lucas v. Shively*, 31 F. Supp. 3d 800, 811 (W.D. Va. 2014 (citations omitted). Probable cause is a "flexible, common-sense standard." *Florida v. Harris*, 568 U.S. 237, 240 (2013) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). It is "determined by a 'totality-of-the circumstances' approach.'" *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Gates*, 462 U.S. at 230). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id*. (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)).

6

The existence of probable cause depends on "whether, at the moment the arrest was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations omitted). "[W]hile probable cause requires 'more than mere suspicion of wrongdoing,' it 'requires much less evidence than needed to convict.'" *Lucas*, 31 F. Supp. 3d at 811 (citations omitted). "[P]robable cause is a lower standard than 'more likely than not,' i.e., a preponderance of the evidence." *Id*. (citation omitted). "[W]hat is required is a 'fair probability,' given all the circumstances." *Id*. at 812 (citation omitted).

"Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016) (citations omitted). Here, there plainly was probable cause to believe Plaintiff was trespassing and had committed burglary at the Property. Both trespassing and burglary contain an element that requires the arrestee to have been present on the lands of another. *See* Virginia Code §§ 18.2-119 and 18.2-89. Here, the Property had been posted with "No Trespassing" signs and the residence had been secured. (Compl. ¶ 49.) Yet, Plaintiff was found to be in the residence after midnight. (*Id*. ¶ 85-86.) He was in the process of removing personal property from the residence. (*See id*. ¶¶ 84, 87, 91.) Holtzman reported to Whorton that Plaintiff was trespassing. (*Id*. ¶ 94.) Plaintiff affirmatively alleged that Holtzman had "purchased" the Property at the foreclosure auction. (*Id*. ¶¶ 38-39.)

Under Virginia law, "'[o]nce the auctioneer's hammer falls and he signs a memorandum of sale, the [d]ebtor no longer possesses a legal or equitable interest in the property.'" *Epperson*,

7

836 F. App'x. at 130 (quoting *City of Roanoke*, 410 B.R. at 224). "Upon foreclosure under a Virginia deed of trust, '[t]he contract of sale [is] consummated when the auctioneer crie[s] the property out to the person making the highest and last bid." *Ramos*, 289 Va. at 324. Plaintiff's "property rights were extinguished" once the Property was sold at the foreclosure auction. *Epperson*, 836 F. App'x at 130. "At this point, and before settlement, the trustee retains legal title to the property, while the purchaser possesses the right to enforce the sale in equity." *Abdelhaq*, 82 B.R. at 810 (citing *Ryland Group, Inc.*, 229 Va. at 464). The prior owner possesses "no interest" in the Property following the foreclosure sale – ownership, possessory, or otherwise. *Id.*; *see also Williams v. Nathan*, 1993 U.S. Dist. LEXIS 20968, *15 (E.D. Va. March 19, 1993) ("it was clear as a matter of law that because of the default and resulting foreclosure, Plaintiff no longer had any possessory interest in the property"); *Phillips v. Munson*, 21 Va. Cir. 531, 532, n. 1 (Shenandoah County Circuit Court, 1982) (finding that a debtor's property interests in timber were terminated upon a foreclosure sale of the property).

Based on the foregoing allegations in the Complaint and the law in Virginia concerning the impact a foreclosure sale has on a debtor's interest in property, Whorton had probable cause to believe Plaintiff was trespassing on the Property and had committed burglary by removing personal property from the Property.

      **C.**      **Even If Plaintiff Had Alleged A Fourth Amendment Violation, The Right At Issue Would Not Be A Clearly Established Right.**

Under the second prong of the qualified immunity framework, "[o]fficials lose the protection of [qualified] immunity if they violate a constitutional or statutory right of the plaintiff and the right was clearly established at the time of the alleged violation such that an objectively reasonable official in the defendants' position would have known of it." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998) (quoting *Harlow*, 457 U.S. at 818). "[T]he degree of knowledge of

8

the law imputed to government officials is that imputable generally to a reasonable official. Accordingly, 'all but the plainly incompetent or those who knowingly violate the law' are protected." *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). This standard "gives ample room for mistaken judgments." *Briggs*, 475 U.S. at 343. "[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Porterfield*, 156 F.3d at 567 (citation and quotation omitted). "Qualified immunity thus provides a 'safe-harbor' from tort damages for police officers performing objectively reasonable actions in furtherance of their duties." *Id.* at 568.

When evaluating an officer's entitlement to qualified immunity, it is first necessary to identify the specific right at issue at a high level of particularity. *See Safar v. Tingle*, 859 F.3d 241, 246 (4th Cir. 2017). "Although '[the Supreme] Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)) (per curiam).

There is no case that puts the constitutional questions in this case beyond debate. No applicable law establishes that Plaintiff had a clearly established right to be on the Property and to remove personal property from the Property following the foreclosure sale. To the contrary, the law in Virginia is clear that Plaintiff had no such rights. *See supra* at 7-8. Accordingly, Officer Whorton is protected by qualified immunity from Plaintiff's constitutional claims.

> **D. Plaintiff Fails To State An Equal Protection Claim Against Whorton Upon Which Relief Can Be Granted.**

Plaintiff's Second Cause of Action is for an alleged "Equal Protection Violation" against the "Police Officer Defendants". As with Counts One and Three, the alleged underlying "illegal" action is an arrest without probable cause. (Compl. ¶ 146.) As discussed above, plaintiff's

9

constitutional claims premised upon the alleged false arrest fail as a matter of law. The same reasoning defeats Plaintiff's equal protection claim against Officer Whorton.

Plaintiff's equal protection claim fails for other reasons as well. To establish a prima facie case of discrimination under the equal protection clause, Plaintiff "must allege that he was treated differently from another similarly situated individual, and 'that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Baker v. McCall*, 842 F. Supp. 2d 938, 950 (W.D. Va. 2012) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999)). In other words, the unequal treatment must result from intentional or purposeful discrimination. *Robinson v. E. Carolina Univ.*, 329 F. Supp. 3d 156, 181 (E.D. N.C. 2018) (citing *Stop Reckless Econ. Instability Caused By Democrats v. FEC*, 814 F.3d 221, 233 (4 th Cir. 2016). Plaintiff cannot establish either of these elements.

Here, Plaintiff fails to identify any similarly situated individual. He claims he was treated differently from "others whose houses had been subject to a foreclosure sale." (Compl. ¶ 148). However, Plaintiff simply states in a wholly conclusory manner that he was treated differently. He fails to plead any examples where foreclosed homeowners were treated differently. He fails to allege intentional discrimination by Whorton. In fact, he alleges the opposite. He alleges that she was confused and ultimately deferred to Holtzman and her superiors in deciding to arrest Plaintiff. (*Id.* ¶¶ 89, 97, 101-07, 111.)

For these reasons, Plaintiff has failed to state an equal protection claim against Officer Whorton.

### E. Plaintiff's 42 U.S.C. § 1985 Conspiracy Claims Against Whorton Fail As A Matter Of Law.

If there were any claims against Whorton that survive the foregoing arguments, then the allegations nonetheless are insufficient as a matter of law to demonstrate that Whorton participated in a conspiracy under 42 U.S.C. 1985 to deprive Plaintiff of his constitutional rights.

"Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). A plaintiff must show five elements to state a claim for a § 1985 conspiracy:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without a Name v. Va.*, 655 F.3d 342, 346 (4th Cir. 2011).

A plaintiff additionally "must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." *Id.* (internal citations and quotations omitted). There is a "weighty burden to properly bring" a § 1985 conspiracy claim. *Smith v. Town of South Hill*, 2020 U.S. Dist. LEXIS 49002, *66, 2020 WL 1324216, *26 (E.D. Va. Mar. 20, 2020) (citation omitted). Conspiracy claims are to be rejected "whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *A Soc'y Without a Name*, 655 F.3d at 346.

Here, there is no allegation that Whorton had a meeting of the minds with any other defendant to violate Plaintiff's constitutional rights. Whorton received an assignment from Chief Sterner and Sergeant Cowart to check the Property during her patrols. (Compl. ¶¶ 62-63.) Plaintiff alleges that Holtzman lied to her about Plaintiff's actions and told Whorton the decision to arrest

Plaintiff was not up to him. (*Id.* ¶¶ 94-96.) Plaintiff alleges that "Cowart did not prevent Officer Whorton from arresting Wilson without probable cause." (*Id.* ¶¶ 105.) These allegations fall woefully short of demonstrating the kind of concerted activity in furtherance of a conspiracy required for a § 1985 conspiracy claim.[2]

### F. Plaintiff's Claims Against Whorton Under The Virginia Constitution Also Fail As A Matter Of Law.

Finally, Plaintiff alleges that Whorton violated Plaintiff's rights under the Virginia Constitution. Plaintiff fails to identify which sections of the Virginia Constitution allegedly were violated. However, for the same reasons that the Plaintiff's federal claims fail against Whorton, any parallel state claims also fail. *See Lloyd v. Morgan*, 2015 U.S. Dist. LEXIS 35138, *2-3, 2015 WL 1288349 (E.D. Va. Mar. 20, 2015) (citing *Lloyd v. Morgan*, 2015 U.S. Dist. LEXIS 35345, *14-15 (E.D. Va. Feb. 20, 2015) (concluding where plaintiff failed to state a claim for a federal constitutional violation, her parallel state claim also failed)). *See also See Hart v. Union Cty.*, 2020 U.S. Dist. LEXIS 24299, *16, 2020 WL 710802 (W.D.N.C. Feb. 12, 2020) (citing *Tri-County Paving Inc. v. Ashe County*, 281 F.3d 430, 436 n.6 (4th Cir. 2002)) (applying same rule in North Carolina).

## V.  CONCLUSION[3]

For the reasons stated herein, Plaintiff has failed to state a claim against Officer Christina Whorton upon which relief can be granted. It is respectfully submitted, therefore, that his claim against Officer Whorton should be dismissed with prejudice.

---

[2] For the same responses, any state law common law conspiracy claim against Whorton fails as a matter of law.
[3] Officer Whorton incorporates by reference the defenses and arguments raised by other defendants in their respective motions to dismiss.

CHRISTINA WHORTON

By: /s/ Jeremy E. Carroll
Of Counsel

Jeremy E. Carroll (VSB #41331)
Julian F. Harf (VSB #90775)
GUYNN, WADDELL, CARROLL & LOCKABY, P.C.
415 S. College Avenue
Salem, VA  24153
Phone: 540-387-2320
Fax:     540-389-2350
jeremyc@guynnwadell.com
julianh@guynnwaddell.com
*Counsel for Defendant Christina Whorton*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

David Wood Silek
SILEK LAW GROUP, PC
8229 Boone Blvd, Suite 610
Vienna, VA 22182
Phone: 703-361-9700
dsilek@sileklaw.com
*Counsel for Plaintiff*

Thomas Ray Breeden
THOMAS R. BREEDEN, PC
10326 Lomond Drive
Manassas, VA 20109
Phone: 703-361-9277
trb@tbreedenlaw.com
*Counsel for Plaintiff*

William Bradford Stallard
PENN STUART & ESKRIDGE
P.O. Box 2288
Abingdon, VA 24212-2288
Phone: 276-628-5151
bstallard@pennstuart.com
*Counsel for Police Chief Jeff Sterner*

James A. L. Daniel
DANIEL VAUGHAN MEDLEY & SMITHERMAN, PC
P.O. Box 720
Danville, VA 24541
Phone: 434-792-3911
JDaniel@dmklawfirm.com
*Counsel for Sergeant Keith Cowart*

John David McGavin
BANCROFT, MCGAVIN, HORVATH, & JUDKINS, PC
9990 Fairfax Blvd., Suite 400
Fairfax, VA 22030
Phone: 703-385-1000
jmcgavin@bmhjlaw.com
*Counsel for Officer Robert Young
and Officer Mark Johnson*

                                        <u>/s/ Jeremy E. Carroll</u>
                                        Jeremy E. Carroll (VSB #41331)
                                        Julian F. Harf (VSB #90775)
                                        GUYNN, WADDELL, CARROLL & LOCKABY, P.C.
                                        415 S. College Avenue
                                        Salem, VA  24153
                                        Phone: 540-387-2320
                                        Fax:    540-389-2350
                                        jeremyc@guynnwadell.com
                                        julianh@guynnwaddell.com
                                        *Counsel for Defendant Christina Whorton*